IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY M. FLORES,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIFORNIA PACIFIC MEDICAL CENTER,<br><br>    Defendant                / | No. C 04-1864 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; VACATING HEARING** |

Before the Court is defendant California Pacific Medical Center's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Nancy Flores has filed opposition, to which defendant has replied. Having reviewed the papers submitted in support of and in opposition to the motion, the Court deems the matter appropriate for decision on the papers, VACATES the hearing scheduled for August 26, 2005, and rules as follows.

**BACKGROUND**

Plaintiff was formerly employed by defendant as a cashier in defendant's cafeteria. Plaintiff alleges that, during her employment, her manager, Felip Guerrero ("Guerrero"), and her supervisor, Beatrice Shafikhani ("Shafikhani"), repeatedly made hostile comments to plaintiff with respect to plaintiff's age. Plaintiff also alleges that, in May 2003, when plaintiff was 68 years of age, she took a leave of absence after incurring a shoulder injury.

1  Plaintiff alleges that Guerrero advised plaintiff that defendant would not allow her to return
2  to work until she was able to return without any work restrictions, and that when plaintiff
3  later obtained a physician's note stating she could return to work without restriction,
4  Shafikhani refused to allow plaintiff to work and instead demanded that plaintiff leave the
5  premises.  Finally, plaintiff alleges that Guerrero and Shafikhani falsely accused plaintiff of
6  failing to comply with orders and pushing Guerrero, and that such false accusations
7  resulted in plaintiff's termination.
8       Based on the above allegations, plaintiff further alleges that defendant, in violation of
9  both federal and state law, failed to accommodate plaintiff's disability and terminated
10 plaintiff on account of plaintiff's disability and age and in retaliation for plaintiff's having
11 previously taken a leave of absence and having asked for accommodations.

## LEGAL STANDARD

13      Rule 56 provides that a court may grant summary judgment "if the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
15 if any, show that there is no genuine issue as to any material fact and that the moving party
16 is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c).
17      The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),
18 Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.
19 v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary
20 judgment show the absence of a genuine issue of material fact.  Once the moving party
21 has done so, the nonmoving party must "go beyond the pleadings and by her own
22 affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'
23 designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477
24 U.S. at 324 (quoting Rule 56(c)).  "When the moving party has carried its burden under
25 Rule 56(c), its opponent must do more than simply show that there is some metaphysical
26 doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the evidence is merely
27 colorable, or is not significantly probative, summary judgment may be granted."  Liberty
28 Lobby, 477 U.S. at 249-50 (citations omitted).  When determining whether there is a

genuine issue for trial, "'inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" See Matsushita, 475 U.S. at 587 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

## DISCUSSION

In support of its motion for summary judgment, defendant argues that plaintiff failed to exhaust her state law statutory claims and that plaintiff cannot establish a triable issue of fact as to any of her claims.

**A. Exhaustion**

Plaintiff alleges, inter alia, state statutory claims, specifically, that defendant violated the Fair Employment and Housing Act ("FEHA") by failing to accommodate plaintiff's disability and by terminating her on account of her disability, her age, and in retaliation for plaintiff's having requested accommodations, and that defendant violated the California Family Rights Act ("CFRA") by terminating her on account of her having previously obtained a leave. Defendant argues that plaintiff failed to exhaust her state statutory claims.

"Prior to filing an FEHA action, an employee must file a charge of discrimination with the Department of Fair Employment and Housing (DFEH) and obtain a notice of right to sue." Couveau v. American Airlines, Inc., 218 F. 3d 1078, 1082 (9th Cir. 2000).[1] Here, plaintiff filed an administrative claim with the Equal Employment Opportunity Commission ("EEOC"), alleging therein that defendant had failed to accommodate plaintiff's disability, and that defendant terminated plaintiff on account of her disability, her age, and for retaliatory reasons. (See Titley Decl., filed July 22, 2005, Ex. 1 at DEF 00284.) The

//
//

---

[1] "CFRA is a portion of FEHA that provides protections to employees needing family leave or medical leave." Dudley v. Department of Transp., 90 Cal. App. 4th 255, 260 (2001) (internal quotation and citation omitted). Thus, a plaintiff is required to exhaust a claim under CFRA by filing a claim with the DFEH and obtaining a right-to-sue letter. See Cal. Gov't Code § 12965(b).

3

EEOC, pursuant to a work-sharing agreement,[2] referred the claim to the DFEH and the DFEH subsequently issued plaintiff a right-to-sue notice. (See id. Ex. 1 at DEF 00288.)

Defendant nonetheless argues that plaintiff failed to exhaust her state statutory claims because the claim plaintiff filed with the EEOC referred to the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"), and did not explicitly refer to FEHA and CFRA. Defendant, however, cites no authority in support of its assertion that a claimant, in order to exhaust, must identify all statutes potentially implicated by the factual allegations set forth in the claim. Indeed, in light of the agencies' work-sharing agreement, California courts have found state statutory claims exhausted in the absence of such specificity in a claim filed with the EEOC. See, e.g., Downs v. Department of Water and Power, 58 Cal. App. 4th 1093, 1097-98 (1998) (holding where claimant filed claim with EEOC alleging discrimination in violation of Title VII, and DFEH, after receiving claim from EEOC pursuant to work-sharing agreement, issued right-to-sue letter to claimant, claimant exhausted discrimination claim under FEHA).

Accordingly, defendant is not entitled to summary judgment on the ground that plaintiff failed to exhaust her state statutory claims.

**B. Discriminatory Termination Claims**

Plaintiff alleges that her termination was on account of her disability, in violation of the ADA, FEHA, and California public policy, and on account of her age, in violation of the ADEA, FEHA, and California public policy.

**1. Termination on Account of Disability**

Defendant argues that plaintiff cannot establish her claims for discriminatory termination because plaintiff cannot establish that she is disabled or that defendant's

---

[2] "The EEOC has a work-sharing agreement with the DFEH. The agreement recognizes that the agencies share common goals and jurisdiction. In order to provide individuals with an efficient procedure for obtaining redress for their grievances under the relevant state and federal laws, the two agencies agreed to integrate their procedures to reduce duplication of effort. The EEOC and the DFEH each designated the other as its agent for receiving charges and agreed to forward to the other agency copies of all charges potentially covered by the other agency's statute." Downs v. Department of Water & Power, 58 Cal. App. 4th 1093, 1097 (1997).

proffered reasons for the termination were pretextual.

### a. Prima Facie Case

An individual is "disabled" for purposes of the ADA if, inter alia, she has a physical impairment that "substantially limits" one or more "major life activities." See 42 U.S.C. § 12102(2). An individual is "disabled" for purposes of FEHA if, inter alia, she has a physical impairment that "limits" one or more major life activities. See Cal. Gov't Code § 12926(k). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(I).

Plaintiff offers evidence that she has a physical impairment, specifically, a rotator cuff tear incurred prior to May 2003, and that such an injury does not heal and becomes "progressively more painful." (See Adelman Decl., filed August 2, 2005, Ex. 2 at 33:21-34:2, 35:9-15.) Defendant argues that plaintiff nonetheless has not shown she was disabled at the time of her termination because prior to that date she had returned to work full-time and without restriction. Plaintiff, however, offers evidence that as a result of her shoulder impairment, she is "extremely limited" in her ability to perform household chores such as shopping, cooking, and cleaning, to the extent that her daughter now performs 70% of those chores for her, (see Flores Decl., filed August 2, 2005, ¶ 5), is "unable" to garden, to perform movement calisthenics, and to babysit her grandchild, (see id.), has difficulty lifting objects weighing more than a few pounds, (see id. ¶ 6), and is "significantly restricted" in her ability to open doors, dress herself, get out of bed, get up from furniture, and write, (see id. ¶ 8).[3] Although each of the above-referenced tasks may not, by itself,

---

[3] In its reply, defendant argues that restrictions concerning tasks performed outside the workplace are irrelevant with respect to the issue of whether plaintiff is disabled. As the Supreme Court has explained, however, "[t]here is no support in the [ADA] . . . for the [ ] idea that the question of whether an impairment constitutes a disability is to be answered only by analyzing the effect of the impairment in the workplace." See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 201 (2002). More recently, defendant has filed objections, on the ground, inter alia, that some of plaintiff's evidence is conclusory. Assuming, arguendo, some of the statements relied on by plaintiff are conclusory in nature, other statements are sufficiently factual in nature.

5

constitute a major life activity, a reasonable trier of fact could conclude that such tasks, considered together, constitute a major life activity, and that plaintiff's ability to perform such tasks is substantially limited by her impairment. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197, 202 (2002) (holding tasks that do not independently qualify as major life activities can, together, be considered a major life activity, where such tasks are "of central importance to people's daily lives," such as "household chores, bathing, and brushing one's teeth").

### b. Pretext

Defendant argues it had legitimate reasons to terminate plaintiff, and that plaintiff cannot show defendant's reasons were a pretext for disability discrimination.

Defendant contends that defendant conducted an "investigation" and terminated plaintiff as a result of defendant's conclusion that on November 4, 2003 plaintiff had "refus[ed] to follow instructions from her supervisor and manager to train on new procedures," had "push[ed] her manager," and had "refus[ed] to leave the premises after her manager requested her to do so." (See Rooney Decl., filed July 22, 2005, ¶ 5.)

Plaintiff, however, has offered evidence that she did not engage in the conduct of which she is accused. (See Adelman Decl. Ex. 1 at 166:23 - 167:6, 173:7-25, 189:7-16, 218:6-25; Garcia Decl., filed July 22, 2005, Ex. A-1 at 179:14-19.) In other words, plaintiff argues that her manager, Guerrero, and her supervisor, Shafikhani, who both had reported the accusations, made false reports that plaintiff had engaged in such conduct. Further, plaintiff has offered evidence from which a reasonable trier of fact could conclude Guerrero and Shafikhani harbored a discriminatory animus toward plaintiff. Specifically, plaintiff has submitted evidence of Guerrero's having represented to plaintiff that defendant would not allow her to return to work unless she could work without any limitation, (see Adelman Decl. Ex. 1 at 121:14 - 122:5; 124:24 - 125:5), even though such representation was, according to evidence submitted by defendant, directly contrary to defendant's policy, (see Garcia Supp. Decl., filed August 12, 2005, Ex. B at 70:16-21), and evidence of Shafikhani's having refused to allow plaintiff to return to work even after plaintiff had complied with Guerrero's

6

unauthorized directive by presenting a physician's note stating she could work without restriction, (see Adelman Decl. Ex. 1 at 158:13-18, 189:18-20; Garcia Decl. Ex. A-1 at 111:15- 112:21, 161:14-18; Ex. 8 attached to Ex. A-2).

Although plaintiff has not offered evidence to support a finding that Sharon Rooney ("Rooney"), the person who terminated plaintiff, harbored any discriminatory animus toward plaintiff, defendant itself has offered evidence that Rooney's decision was based on information Guerrero and Shafikhani provided to Rooney's investigator and to Rooney directly, (see Titley Decl. ¶ 5; Rooney Decl. ¶ 4); as noted above, plaintiff has offered evidence that such information was false. Under the circumstances, a reasonable trier of fact could conclude that a causal link existed between the discriminatory animus of Guerrero and Shafikhani and the termination decision. See Perez v. Curcio, 841 F. 2d 255, 257-58 (9th Cir. 1988) (holding defendant not entitled to summary judgment on age discrimination claim where supervisor, acting with discriminatory animus, "made the report that motivated the investigation" and "decisionmakers relied on written reports prepared by [the supervisor]"); see also Ostad v. Oregon Health Sciences Univ., 327 F. 3d 876, 885 (9th Cir. 2003) (holding, in context of retaliation claim where supervisor made accusation, supervisor had "influence over the [termination] process," and decisionmaker's "lack of information about [the plaintiff's] protected conduct and [supervisor's] bad motives did not cut off the chain of causation").

Accordingly, defendant is not entitled to summary judgment on plaintiff's disability discrimination claims.

**2. Age Discrimination**

    **a. Prima Facie Case**

Defendant argues that plaintiff cannot establish a prima facie case of age discrimination because it is undisputed plaintiff "was insubordinate" and "rude" on November 4, 2003, and "knowingly performed her job duties in a manner prohibited by management and refused to stop when asked to do so." (See Def.s' Mem. of P. & A., filed July 22, 2005, at 20:15-20.) For the reasons stated above, plaintiff has offered sufficient

evidence to support a finding that she did not engage in such conduct, and, consequently, defendant is not entitled to summary judgment on this ground.

### b. Pretext

Defendant further argues that plaintiff cannot show that defendant's reasons for the termination are a pretext for discrimination on account of plaintiff's age. Plaintiff, however, has offered evidence that both Guerrero and Shafikhani made repeated negative comments with respect to plaintiff's age and continually demanded that plaintiff retire. (See Adelman Decl. Ex. 1 at 134:8-25, 137:16-23, 144:4-14, 204:3-7.)[4] Further, for the reasons discussed above, plaintiff has offered sufficient evidence to support a finding that a causal link existed between the discriminatory animus of Guerrero and Shafikhani and the termination decision.

Accordingly, defendant is not entitled to summary judgment on plaintiff's age discrimination claims.

## C. Failure to Accommodate

In her complaint, plaintiff alleges that while she was employed by defendant, defendant failed to accommodate her disability and failed to engage in any interactive process. In support of this claim, plaintiff offers evidence to support a finding that in approximately the "last week of October" 2003, while plaintiff was on leave, Guerrero refused to allow plaintiff to return to work unless and until she could present a physician's note indicating that plaintiff could perform her duties without restriction, and that Guerrero did not engage in any discussion as to whether defendant could allow plaintiff to perform her duties with the restrictions set by her physician. (See Adelman Decl. Ex. 1 at 104:21 - 105:2, 124:24 - 125:5.) Further, Guerrero testified that he did not, and was unaware that anyone else employed by defendant did, speak to plaintiff about the nature of her limitations in order to determine whether such limitations could be accommodated. (See id.

---

[4] For example, according to plaintiff, Guerrero called plaintiff "grandma" and several times a week asked, "When do you retire?"; Shafikhani told plaintiff that she was "too old to be working" and that she would "have to retire." (See id.)

Ex. 3 at 35:2-13.) Because plaintiff has submitted evidence that she attempted to return to work, with accommodations, in late October 2003 and did return to work on November 4, 2003 without the need for accommodation, plaintiff's evidence essentially shows that she was unable to return to work for approximately one or two weeks as a result of Guerrero's actions.[5]

As noted above, defendant itself has offered evidence that Guerrero's representation to plaintiff was contrary to defendant's policy, which policy, according to defendant's Human Resources Department, is in accordance with the ADA. (See Garcia Supp. Decl. Ex. B at 70:12-21.) Nevertheless, defendant argues, because Guerrero allowed plaintiff to remain on leave, plaintiff cannot establish her claims that she was not provided a reasonable accommodation and that defendant failed to engage in the interactive process.

Initially, the Court observes that defendant, by arguing that plaintiff was given the accommodation she requested, i.e., a leave, (see Def.'s Mem. of P. & A. at 17:20-21), misconstrues plaintiff's claim. Plaintiff does not argue that defendant is liable because it failed to provide her a leave. Instead, plaintiff argues that while she was on the requested leave, she became able to perform her position, albeit with accommodation, and that defendant refused to even discuss the matter with her. In support of its assertion that retaining a disabled employee on a leave is, as a matter of law, a reasonable accommodation relieving an employer of its obligation to engage in the interactive process, defendant relies on Kimbro v. Atlantic Richfield, 889 F. 2d 869 (9th Cir. 1989), cert. denied, 498 U.S. 814 (1990). In Kimbro, the plaintiff sought, as a reasonable accommodation for a disability, a one-month leave, which, under the circumstances therein, the Ninth Circuit held to be a reasonable accommodation, and that, consequently, defendant's failure to provide such leave constituted a violation of its obligation to provide reasonable accommodation. See id. at 877-79. Kimbro, however, is inapposite because, as noted above, plaintiff does

---

[5] No party has offered any evidence as to whether plaintiff was on paid leave. As a consequence, the Court cannot find that plaintiff, in the event she can establish liability, is unable to establish damages.

1  not assert defendant failed to provide her a leave; rather, plaintiff's claim is that defendant
2  failed to allow her to return to work from the leave when she could have returned with
3  reasonable accommodation.  In that regard, defendant does not argue that plaintiff's
4  request would have imposed an undue hardship, see id. at 878 (holding plaintiff not entitled
5  to accommodation that would impose "undue hardship" on employer), or otherwise
6  articulate how plaintiff is foreclosed from establishing her failure to accommodate and/or
7  failure to engage in interactive process claims.
8       Accordingly, defendant is not entitled to summary judgment on plaintiff's failure to
9  accommodate and failure to engage in the interactive process claims.

**D.  Retaliation**

11      Plaintiff alleges she was terminated in retaliation for engaging in protected activity.
12 Plaintiff raises this claim pursuant to the ADA, FEHA, the CFRA, and the Family Medical
13 Leave Act ("FMLA").

14      **1.  ADA and FEHA**

15      The ADA provides: "No person shall discriminate against any individual because
16 such individual has opposed any act or practice made unlawful by this chapter or because
17 such individual made a charge, testified, assisted, or participated in any manner in an
18 investigation, proceeding, or hearing under [the ADA]."  See 42 U.S.C. § 12203(a).
19 Similarly, FEHA provides that it is unlawful for an employer to "discharge . . . any person
20 because the person has opposed any practices forbidden under [FEHA]."  See Cal. Gov't
21 Code § 12940(h).
22      Defendant argues that plaintiff cannot establish that she "opposed" any act that was
23 unlawful under the ADA or FEHA.  Plaintiff, in opposition, asserts that she requested
24 accommodations.  Plaintiff, however, testified that she never complained or otherwise
25 notified anyone about Guerrero's asserted failure to accommodate her, or, for that matter,
26 about any action taken by Guerrero or Shafikhani.  (See Adelman Decl. Ex. 1 at 134:3-7,
27 136:17-25.)  In short, plaintiff lacks evidence to establish that she "opposed" any act

unlawful under the ADA or FEHA.[6]

Accordingly, defendant is entitled to summary judgment on plaintiff's claims of retaliation under the ADA and FEHA.

### 2. Family Leave Act

Under both FMLA and CFRA, a plaintiff can establish a claim for "retaliation" by demonstrating that she was terminated on account of her having taken a leave. See Dudley v. Department of Transp., 90 Cal. App. 4th 255, 261 (2001).

Defendant argues that plaintiff cannot establish such a claim here because, according to defendant, it is undisputed plaintiff "refus[ed] to take instruction from her supervisors," was "belligerent," and "push[ed] her manager." (See Def.'s Mem. of P. & A. at 22:17-20.) As discussed above, defendant's argument that these events are undisputed is not supported by the evidence.

Defendant further argues that there is no causal connection between plaintiff's termination and plaintiff's having taken a leave. As discussed above, however, plaintiff has offered evidence that Guerrero misrepresented defendant's accommodation policy and Shafikhani refused to allow plaintiff to return to work even after plaintiff had complied with Guerrero's unauthorized directive. Further, plaintiff has offered evidence that Guerrero and Shafikhani made false accusations about plaintiff to Rooney and her investigator, and that Rooney's decision was based on information Guerrero and Shafikhani provided to Rooney and her investigator. Under the circumstances, a reasonable trier or fact could conclude that a causal link existed between the retaliatory motives of Guerrero and Shafikhani and the termination decision.

Accordingly, defendant is not entitled to summary judgment on plaintiff's FMLA and CFRA claims.

//

---

[6]To the extent plaintiff reasserts that she was not provided accommodations and/or was terminated on account of disability animus, plaintiff, as discussed above, has alleged specific claims to such effect.

11

**E. Punitive Damages**

Defendant argues that it is entitled to summary judgment on plaintiff's claim for punitive damages because there is no evidence of malice. Plaintiff, however, has offered evidence from which a reasonable trier of fact could conclude that Guerrero, one of defendant's managers, and Shafikhani, one of defendant's supervisors, engaged in malicious conduct.[7]

Defendant also argues that punitive damages are not available under FMLA. Defendant is correct. See Xin Liu v. Amway Corp., 347 F. 3d 1125, 1133 n.6 (9th Cir. 2003) ("The FMLA only provides for compensatory damages and not punitive damages.")

Accordingly, defendant is not entitled to summary judgment on plaintiff's claim for punitive damages, except to the extent plaintiff seeks such damages as a remedy for any FMLA violation.

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment is hereby GRANTED in part and DENIED in part, as follows:

1. Defendant is entitled to summary judgment on the Third Cause of Action, alleging retaliation under the ADA, and the Seventh Cause of Action, alleging retaliation under FEHA.

2. Defendant is entitled to summary judgment on the Eighth Cause of Action, alleging a claim under the FMLA, solely to the extent plaintiff seeks punitive damages as a remedy.

3. In all other respects, the motion is DENIED.

**IT IS SO ORDERED**.

Dated: August 24, 2005

MAXINE M. CHESNEY
United States District Judge

---

[7] To establish "corporate punitive damages liability," the plaintiff must prove the "wrongful act giving rise to the exemplary damages [was] committed by an 'officer, director, or managing agent.'" White v. Ultramar, Inc., 21 Cal. 4th 563, 572 (1999) (quoting Cal. Civ. Code § 3294(b)). Defendant did not raise the issue of whether Guerrero and/or Shafikhani are managing agents and, consequently, the Court has no occasion to consider that issue.